UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

CARL HOLMES,

                              Petitioner,

          -vs-

SUPERINTENDENT KAREN CROWLEY,

                              Respondent.

**No. 6:17-cv-06118-MAT**
**DECISION AND ORDER**

———————————————————————————

## I.   Introduction

Carl Holmes ("Petitioner") brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 ("Section 2254"), alleging that he is being held in custody in violation of his constitutional right of access to the courts. Petitioner is incarcerated as the result of a judgment entered on March 18, 2008, in New York State Supreme Court, Monroe Count (Doyle, J.), following a jury verdict convicting him of Attempted Murder in the Second Degree (N.Y. Penal Law ("PL") §§ 110.00, 125.25(1)), and two counts of criminal possession of a weapon in the second degree (PL § 265.03(1)(b); (3)). For the reasons discussed below, habeas relief is not warranted.

## II.  Factual Background and Procedural History

On the afternoon of August 30, 2008, Corey Sparrow ("Sparrow"); his cousin, James Houston ("Houston"); and an unidentified third man wearing a gray hooded sweatshirt went to a small clothing store called "Fit 'Em Up" on Genesee Street in the

City of Rochester. The store was partially owned by Jaime Smith ("Smith"). Petitioner, who knew Sparrow and Houston, was visiting Smith in the store at the time. Both Sparrow and the man in the gray sweatshirt were armed. Sparrow demanded that Smith pay him a sum of money, which Smith said that he did not have. This prompted Sparrow to hurl a belt rack at a mirror and fire a gunshot. Petitioner was ordered to get down on the ground, but he tackled the man in the gray sweatshirt and was able wrest the gun away from him. Sparrow and his friends then left the store, and Petitioner called 911. While he was on the phone with the 911 operator, he was approached by Houston, who had a gun, and the unnamed other man. He then started running away from them, but then stopped chasing him shortly.

Petitioner then headed back towards the store. Around Hopkins Alley, Sparrow, Houston and the unnamed man approached him. Sparrow angrily asked him if he had called the police.

When Petitioner replied affirmatively, Sparrow called him a "mother fucker faggot" and said he know Sparrow was on parole. He demanded that Petitioner get him $3,000 or he would kill Petitioner and his mother. Houston threatened to come back to "lay him down" and the unnamed man threatened that he was "gonna dead [him]." (Transcript ("Tr.") 1236-37).

As Sparrow and his friends were getting into Sparrow's car, Petitioner told them to pull over so he could talk to them. Sparrow threatened him again and told him to meet him at the park and "have

that gun" with him, meaning the gun he had taken from the man in the gray sweatshirt at Smith's store. Traveling in Smith's car, Smith and Petitioner followed Sparrow, who was heading in the direction of the park. However, as they approached the park, Petitioner told Smith to drive to Petitioner's mother's house so that he could check on his family. When they arrived, Petitioner went to the house and rang the doorbell, but there was no answer.

Meanwhile, Sparrow and his cohorts realized that Smith and Petitioner had evaded them. Sparrow then drove to Petitioner's mother's house. When Petitioner saw Sparrow and his friend arrive, he went back to the car, where he had left the gun he had taken from the man in the gray sweatshirt. Sparrow began arguing with Petitioner and turned as if to reach for his gun. Petitioner shot Sparrow three times, fatally wounding him. Seeing that Houston was standing in the driveway of Petitioner's mother's house, Petitioner got into the driver's side of Smith's car and drove after Houston and fired gunshots at him. One of the shots struck Houston's elbow.

After the shooting, Petitioner disposed of the weapon and eventually surrendered himself to the police.

At the jury trial, Petitioner testified and called Smith as a defense witness. The jury returned a verdict  finding him not guilty of the murder of Sparrow and the related weapon-possession charge but finding him guilty of second-degree attempted murder with regard to Houston and the related two counts of second-degree criminal possession of a weapon. Petitioner was sentenced to

concurrent, determinate prison terms of 15 years, plus 5 years of post-release supervision, on each count.

Petitioner filed a *pro se* motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10 in the Monroe County Supreme Court seeking to vacate the judgment on various grounds related to the grand jury proceedings. The People opposed the motion, and Petitioner filed a reply. On December 21, 2009, Petitioner's motion was denied. Petitioner did not seek leave to appeal.

Through counsel, Petitioner pursued a direct appeal to the Appellate Division, Fourth Department, of New York State Supreme Court ("Fourth Department"), which unanimously affirmed the judgment of conviction. *People v. Holmes*, 129 A.D.3d 1692 (4ᵗʰ Dep't 2015). The New York Court of Appeals denied leave to appeal. *People v. Holmes*, 26 N.Y.3d 968 (2015).

Petitioner then filed a *pro se* application for a writ of error *coram nobis* in the Fourth Department, arguing ineffective assistance of appellate counsel based on the failure to brief a claim that trial counsel rendered ineffective assistance by failing to preserve for appeal his legal sufficiency and jury instruction claims. The People filed an opposing affirmation. On February 3, 2017, the Fourth Department summarily denied *coram nobis* relief. Petitioner did not seek leave to appeal.

In his timely *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Petitioner argues that (1) the trial court improperly denied his request to instruct the jury on the

defense of justification pursuant to P.L. § 35.20(3), i.e., whether Petitioner was justified in using deadly physical force to prevent Houston from committing or attempting to commit a burglary of his mother's home; (2) the evidence was legally insufficient to support his attempted murder conviction; (3) the trial court improperly refused to give a jury instruction on the defense of temporary innocent possession of a firearm; and (4) the trial court should have given a "choice of evil" jury instruction, and trial counsel was ineffective for failing to preserve the issue for appeal.

Respondent answered the petition, arguing that the second and third claims are procedurally barred and, in any event, are meritless. Respondent argues that, as to the first claim, the Fourth Department reasonably applied Supreme Court law in rejecting his remaining jury instruction claims. Finally, Respondent argues, his ineffective trial counsel claim based on the failure to request a "choice of evil" jury charge is unexhausted and, in any event, without merit because no such charge was warranted on the facts. Petitioner did not file any reply pleadings.

## III. Discussion

### A.   The Trial Court Did Not Err in Denying Jury Instructions Requested by the Defense (Grounds One and Three)

As ground one for relief, Petitioner argues that the trial court erred in denying his request for a jury charge on the defense of justification under PL § 35.20(3).  As ground three of the petition, Petitioner further contends that his right to a fair

trial was violated by the trial court's denial of his request for a jury charge of temporary and lawful possession of a weapon as a defense to the weapon possession charges.

### 1. Standard of Review

The instant petition, filed after the effective date of the amendments to 28 U.S.C. § 2254 ("Section 2254"), is subject to the limitations on federal habeas relief set forth in subsection (d). Because the Fourth Department adjudicated these claims on the merits, habeas relief is warranted only if the court's rulings were contrary to, or an unreasonable application of, clearly established law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

The Supreme Court has clearly held that the propriety of a state trial court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional question. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). A state court's failure to give a particular jury instruction does not raise an issue of federal constitution magnitude unless the error "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp*, 414 U.S. at 147). Thus, a petitioner bears an "especially heavy" burden when complaining that his constitutional rights were violated by the trial court's failure to give a particular jury instruction. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The Second Circuit has established a three-step inquiry to guide determination of habeas claims based on a trial court's refusal to give a jury charge: (1) whether the petitioner was entitled to the charge under state law; (2) if so, whether the failure to give the charge resulted in a denial of his federal due process rights; and (3) if so, whether the state court's decision constituted an unreasonable application of clear Supreme Court law. *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005) (citing *Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001)).

### 2. A Justification Charge Under PL § 35.20(3) Was Not Required Under New York Law

The court's role, sitting in habeas review, "is not to interpret New York's law of justification, but to determine whether the evidence was sufficient to warrant a justification charge under that law." *Davis*, 270 F.3d at 123–24 n. 4; *accord Jackson*, 404 F.3d at 621–22. Under New York law, a trial court must instruct a jury on the defense of justification if there is any reasonable view of the evidence that the defendant's actions were justified. *People v. Cox*, 92 N.Y.2d 1002, 1004 (1998). PL § 35.20(3), in particular, provides as follows:

> A person in possession or control of, or licensed or privileged to be in, a dwelling or an occupied building, who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling or building, may use deadly physical force upon such other person when he or she reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary.

N.Y. Penal Law § 35.20(3). Second-degree burglary is committed, for purposes of PL § 140.25, when a person "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" and the building is a dwelling. N.Y. Penal Law § 140.25.

In determining whether a justification charge is warranted, the trial court must evaluate the proof in the light most favorable to the defendant. *Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir. 1990). "[I]f any reasonable view of the evidence would permit the fact-finder to decide that the conduct of the accused was justified, an instruction on the defense should be given." *People v. McManus*, 67 N.Y.2d 541, 549 (1986) (citation omitted). However, "[the trial] court is not required to adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted." *Blazic*, 900 F.2d at 540 (citing *People v. Butts*, 72 N.Y.2d 746, 750 (1988)). "[D]ue process does not require the giving of a jury instruction when such charge is not supported by the evidence." *Id.* (citing *Hopper v. Evans*, 456 U.S. 605, 611 (1982)).

Thus, for the defense to apply, there must have been evidence that reasonably could be viewed as establishing the following elements (1) Petitioner was lawfully in a dwelling, i.e., his mother's home; (2) Petitioner reasonably believed that Houston had knowingly entered or was remaining unlawfully in his mother's house with the intent to commit a crime therein; and (3) Petitioner

reasonably believed that deadly force was necessary to stop Houston's in-progress, or attempt to commit, burglary.

The Fourth Department held that "[e]ven assuming, *arguendo*, that [Petitioner] was 'licensed or privileged to be in' his mother's apartment for purposes of [PL] section 35.20(3), . . . there is no reasonable view of the evidence that Houston was committing or attempting to commit a burglary therein, and thus [Petitioner] was not entitled to a jury instruction under that statute[.]" *Holmes*, 129 A.D.3d at 1694 (citation omitted). No witness—including Petitioner—testified that Houston had handled a door or a window or took any other action in an attempt to gain entry to Petitioner's mother's house when Petitioner pursued him. Petitioner himself testified that, although he saw Houston on the driveway outside his mother's house, Petitioner ran Houston off the property and shot at him during the chase. Thus, Petitioner's own testimony did not support a jury charge under PL § 35.20(3).

Because there was no reasonable view of the evidence that Houston was committing or attempting to commit a burglary, the trial court did not err as a matter of New York state law in declining to instruct the jury to consider whether Petitioner was justified in using deadly physical force to prevent Houston from committing or attempting to commit a burglary. Accordingly, the Fourth Department's rejection of this claim could not have been an unreasonable application of, or contrary to, clearly established Supreme Court precedent.

### 3. A Charge Regarding the Defense of Temporary and Lawful Possession Was Not Warranted

Under certain circumstances, New York law allows a person to possess a criminally prohibited weapon and yet not be guilty of a crime, so long as the possession results unavoidably from the performance of some lawful act. *People v. Williams*, 50 N.Y.2d 1043, 1045 (1980); *see also*, *e.g.*, *People v. Almodovar*, 62 N.Y.2d 126, 130 (1984) ("[A] defendant may not be guilty of unlawful possession if the jury finds that he found the weapon shortly before his possession of it was discovered and he intended to turn it over to the authorities, or that he took it from an assailant in the course of a fight[.]") (internal and other citation omitted). "To warrant a jury instruction on the defense of temporary and lawful possession, 'there must be proof in the record showing a legal excuse for [the defendant's possession of] the weapon . . . as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner[.]'" *People v. Sackey-El*, 52 N.Y.S.3d 492, 495 (2d Dep't 2017) (quoting *People v. Banks*, 76 N.Y.2d 799, 801 (1990)). Thus, courts have held that the charge is not warranted where, for example, a defendant wrests a loaded pistol away from an assailant, but fails to surrender it to the responding police officers, who then discover the gun under the defendant's bed the next day. *People v. Snyder*, 73 N.Y.2d 900, 901-02 (1989).

Viewing the evidence in the light most favorable to Petitioner, there is no reasonable view of the evidence that supports the defense of temporary and lawful possession. Although he initially acquired the weapon by disarming the man in the gray hooded sweatshirt under circumstances that easily could be deemed justified, Petitioner did not make any effort to turn the gun over to the police, even after he had called 911. Then, even though he had requested assistance from the authorities, he did not wait for them to arrive. Instead, Petitioner took the gun with him to his mother's house. Although he left the weapon in Smith's car when he approached the house and rang the doorbell, he returned to the car and retrieved the gun when Sparrow and Houston arrived. Petitioner then used the gun to shoot Sparrow and Houston. Thus, there was substantial evidence that Petitioner used the weapon in a dangerous manner, which negates the defense. *See Banks*, 76 N.Y.2d at 801. Although Petitioner suggested at trial that he retained possession of the gun to protect himself and his family, based on Sparrow's earlier threats to kill him and his family, that circumstance does not render the possession lawful. *See Almodovar*, 62 N.Y.2d at 130 ("[A] person either possess a weapon lawfully or he does not and he may not avoid the criminal charge by claiming that he possessed the weapon for his protection. Justification may excuse otherwise unlawful use of a weapon but it is difficult to imagine circumstances where it could excuse unlawful possession of it."). Under these circumstances, petitioner was not entitled to a jury

charge on temporary innocent possession of a weapon.  Accordingly, the Fourth Department's rejection of this claim could not have been an unreasonable application of, or contrary to, clearly established Supreme Court precedent.

### C.   The Insufficiency of the Evidence Claim is Procedurally Barred (Ground Two)

Petitioner argues, as he did on direct appeal, that the evidence was insufficient to convict him of the attempted murder of Houston because there was no evidence that he intended to kill Houston instead of injuring him, and the injuries suffered by Houston did not place him at "actual risk of death." The prosecution asserted that the issue of legal sufficiency was not preserved for appellate review because although trial counsel made and renewed a general motion for a trial order of dismissal based on the argument that Houston's testimony was incredible as a matter of law, a general trial order of dismissal motion is not sufficient for preservation. The prosecution further argued that Petitioner's pre-sentencing CPL § 330.30 motion to set aside the verdict, which raised the issue for the first time, was insufficient to preserve it for appellate review. The Fourth Department held that "[n]ot only was that contention unpreserved by a motion for a trial order of dismissal specifically directed at that alleged insufficiency," *Holmes*, 13 N.Y.S.3d at 722 (citing *People v. Hawkins*, 11 N.Y.3d 484, 492 (2008)), it was claim was without merit.

Respondent argues that the Fourth Department's reliance on the rule stated in *Hawkins* regarding the method of preserving a legal insufficiency claim for review is an "adequate and independent" state ground which bars review of the claim's merits by this Court. In *Hawkins*, the New York Court of Appeals held that "[t]o preserve for [its] review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged. . . ." 11 N.Y.2d at 492 (internal and other quotation and citations omitted)).

The adequate and independent state ground doctrine generally forecloses federal habeas review of a state court judgment when the state court rests its holding on a state law ground that is "'independent of the federal question and adequate to support the judgment.'" *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The adequacy and independence of a state procedural bar to the assertion of a federal question are themselves federal questions. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).

To be "adequate," the state procedural requirement must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." *Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007), *cert. denied*, 552 U.S. 1150 (2008). The Court agrees that the rule relied

on is "adequate" to support the judgment as the New York Court of Appeals has "repeatedly made clear–and underscore[d] again [in *Hawkins*]–[that] general motions [for trial orders of dismissal] simply do not create questions of law for this Court's review." *Hawkins*, 11 N.Y.3d at 492 (collecting cases). Moreover, the Second Circuit has recognized this rule as an adequate and independent state ground, explaining that "[a] general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error." *Garvey*, 485 F.3d at 714-15 (citations omitted). Likewise, the Court finds that the rule relied on was "independent" notwithstanding the fact that the Fourth Department also ruled on the merits of the claim. *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (holding that there was "no question that the [a]ppellate [court]'s explicit invocation of the procedural bar constitutes an 'independent' state ground, even though the court spoke to the merits of [the petitioner]'s claim in an alternative holding") (internal and other citation omitted).

Where, as here, the state court has dismissed a petitioner's federal claim on an adequate and independent state ground, habeas review of that claim is procedurally barred unless the petitioner can demonstrate either (1) cause for the default and prejudice attributable thereto; or (2) that the failure to consider the

-14-

federal claim will result in a fundamental miscarriage of justice
(i.e., a constitutional error has probably resulted in the
conviction of someone who is actually innocent). *Coleman v.
Thompson*, 501 U.S. 722, 750 (1991).

To the extent that Petitioner suggests that trial counsel's
ineffectiveness in failing to make a timely and specific motion for
a trial order of dismissal establishes cause for the default, the
Court finds that such a claim cannot establish "cause" because
Petitioner has never exhausted a claim of ineffective assistance of
trial counsel in state court. *See DiSimone v. Phillips*, 461 F.3d
181, 191 (2d Cir. 2006) ("The Supreme Court has held that
ineffective assistance of appellate counsel claims cannot
constitute 'cause' for procedural default unless first presented in
state court as an independent constitutional claim.") (citing
*Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000)). Therefore, the
unexhausted trial ineffectiveness claim cannot serve as cause for
the default.

Further, Petitioner cannot demonstrate prejudice because the
Fourth Department reviewed the legal insufficiency claim on the
merits despite the lack of timely objections. *Ali v. Unger*,
No. 6:13-CV-6210 MAT, 2014 WL 257270, at *9 (W.D.N.Y. Jan. 23,
2014); *Walker v. Bennett*, 262 F. Supp.2d 25, 40 (W.D.N.Y. 2003).
Finally, Petitioner he has not attempted to show that he is
actually innocent such that a fundamental miscarriage of justice
will occur if this Court does not review his defaulted claim.

Therefore, Ground Two is dismissed as subject to an unexcused procedural default.

**D.   The Claims Regarding the "Choice of Evils" Jury Charge Are Meritless (Ground Four)**

Petitioner argues, as he did on direct appeal, that he was entitled to a justification defense based on the so-called "choice of evils" section, PL § 35.05(2), with regard to the attempted murder charge involving Houston. The Fourth Department held that Petitioner had failed to preserve for its review his contention that the court also should have given a "choice of evils" jury instruction pursuant to PL § 35.05(2). *Holmes*, 13 N.Y.S.2d at 722 (citing *People v. LaPetina*, 9 N.Y.3d 854, 855 (2007) ("This contention is not preserved for review in this Court because defendant failed to alert the trial court that, in addition to the Penal Law § 35.15 self-defense instruction discussed during the charge conference, he was also seeking a 'choice of evils' instruction[.]" (citing N.Y. Penal Law § 35.05; *People v. Craig*, 78 N.Y.2d 616 (1991)). The Fourth Department declined to exercise its power to review that contention as a matter of discretion in the interest of justice. *Id.* (citation omitted).

Respondent argues that the claim is barred due to the Fourth Department's reliance on an adequate and independent state ground. Since it is easier to dismiss the claim on the merits than determine the adequacy of the state ground upon which the appellate

court relied,[1] the Court, in the interest of judicial economy, will follow that route.

In relevant part, PL § 35.05(2) provides that "conduct which would otherwise constitute an offense is justifiable and not criminal when . . . [s]uch conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue." N.Y. Penal Law § 35.05(2).

Even entirely accepting the version of events set forth in Petitioner's testimony, the Court finds that he has failed to establish entitlement to a "choice of evils" instruction with regard to the attempted murder charge involving Houston. Prior to the confrontation in which Sparrow was shot by Petitioner, Houston

---

[1]

In the Section 2254 habeas petition filed by the defendant in *LaPetina*, 9 N.Y.3d 854, the case that supplied the state procedural rule on which the Fourth Department relied in Petitioner's appeal, the district court found that the rule was not "adequate" to support the judgment, based consideration of the factors enunciated by the Second Circuit in *Cotto*, 331 F.3d at 239. *See LaPetina v. Carlsen*, No. 07-CV-4335(FB), 2008 WL 4619826, at *2 (E.D.N.Y. Oct. 20, 2008) ("LaPetina argues that the state trial court erred when it did not charge the jury on the justification defense and that the error constituted a violation of the federal constitutional guarantee of due process. Respondent counters that the holding of the Court of Appeals that LaPetina failed to preserve his claim raises a procedural bar that prevents this Court from reviewing LaPetina's claim. The Court disagrees; the claim is not procedurally barred.").

yelled at Petitioner, "I'm gonna be back, you got that, me and my young bloods gonna be back to lay you down[,]" which Petitioner states was an "obvious reference to hurting [Petitioner]." (Tr. 1237). Sparrow threatened that if Petitioner did not get him $3,000 in an hour, he was "going to kill [Petitioner] and [his] mother." (Tr. 1236). Petitioner went to his mother's house to see if she, as well as Petitioner's sister and brother, were okay. (Tr. 1243-44). Petitioner did not know if they were home or not. (*Id.*). He "banged on the door" but no one answered. (Tr. 1245). He admitted that he did not know if she was home. (Tr. 1310). No one answered the door or peeked out the window to see what was going on. (Tr. 1310). Petitioner admitted that his mother has a security system, and that he did not check to see if the door was locked. (Tr. 1310-11). Neither his mother nor anyone else ever came outside. (Tr. 1315).

Sparrow and Houston then pulled up in a black car, got out, stood in the street, and confronted Petitioner and Smith. (Tr. 1249). Sparrow and Houston had their hands in their hoodies, and Petitioner thought they had guns. Sparrow continued to demand money, and Petitioner said he had nothing for him. Sparrow started walking towards him saying, "[B]itch, who the fuck you talkin' to, I'm ready to die," and "reaching on his side." (Tr. 1253). Petitioner fired his weapon when he "[seen] [Sparrow] pulling his gun." (*Id.*).

After shooting Sparrow, Petitioner saw Houston going towards the side of Petitioner's mother's house, towards the driveway area, in a northbound direction on Maxwell Street. (Tr. 1255-56). Petitioner was not sure what Houston was doing and told him to "get the fuck out of here." (Tr. 1256). Houston continued to head north on Maxwell Street which was in the direction towards the back of the house. Petitioner admitted that there is no back door on his mother's side of the duplex (Tr. 1312-14). Petitioner followed Houston in Smith's car; when Houston saw him coming, he ran back towards Petitioner, who stuck the gun out the car window and shot him. (Tr. 1257). Petitioner then pulled into the driveway of his mother's house. (Tr. 1258). Houston turned around and ran back the other direction, away from Petitioner's mother's house. (Tr. 1259). Petitioner claims entitlement to the "choice of evils" instruction, arguing that he reasonably chose the "evil" of shooting in Houston's "general direction" to "prevent him from attempting to hurt or possibly kill his Mother or family members."

For purposes of the "choice of evils" defense, "[t]he requirement that the impending injury be imminent and about to occur requires 'impending harm which constitutes a present, immediate threat—i.e., a danger that is actual and at hand, not one that is speculative, abstract or remote[.]'" *People v. Jing Xiong*, 832 N.Y.S.2d 646, 647 (2d Dep't 2007) (quoting *People v. Craig*, 78 N.Y.2d 616, 624 ()). However, Petitioner's own version events establishes that the "impending injury" (i.e., harm to his mother)

was "speculative" and "remote." Petitioner testified that when he and Smith arrived at his mother's house, he banged on the door repeatedly but no one answered; no one looked outside the windows to see who was there, and no one came outside at any time during the confrontation between Petitioner, Smith, Sparrow, and Houston. Although Petitioner claimed that he was concerned that Houston was going to try to break into his mother's house from the back, there is no back door on the north side of the duplex (although there is a door on the west side (Tr. 1343-44)). Moreover, Petitioner testified that when Houston saw him approaching his car, Houston turned away from Petitioner's mother's house and started running towards Petitioner. In addition, Petitioner's shooting at Houston resulted in one bullet striking the side of his mother's house, which is inconsistent with trying to protect the occupants of the house. (Tr. 1328). There is simply no reasonable view of the evidence that there was an actual, immediate threat of harm to Petitioner's mother that would have justified a "choice of evils" instruction with regard to the attempted murder charge involving the shooting of Houston. Because, under the circumstances, the jury instruction was not warranted, the failure of Petitioner's trial counsel to request it was not objectively unreasonable. Nor was Petitioner prejudiced, because there is no reasonable probability that the trial court would have administered it to the jury. *See*, *e.g.*, *Lee v. Ricks*, 388 F. Supp.2d 141, 158 (W.D.N.Y. 2005) ("As a request to charge lesser included offenses in all likelihood would

have been denied, Lee was not prejudiced by trial counsel's failure to make such a demand. Since the state court on appeal would not have found trial counsel ineffective on this basis, appellate counsel's failure to argue this claim did not result in prejudice.").

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. No certificate of appealability shall issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     November 8, 2018
           Rochester, New York.